UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARK SIRRIS,

               Plaintiff,

   -v-

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

18-CV-1087-MJR

DECISION AND ORDER

      Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 21)

      Plaintiff Mark Sirris ("plaintiff") brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the following reasons, plaintiff's motion (Dkt. No. 15) is denied and defendant's motion (Dkt. No. 18) is granted.

### BACKGROUND[1]

      Plaintiff filed for SSI on March 18, 2014, alleging disability beginning November 1, 2013, due to depression, anxiety, degenerative disc disease, limited use of his left hand, joint stiffness, and foot pain.  (Tr. 19, 58, 109-17, 135, 336, 338)[2]  His claim was initially

---

[1] The Court presumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

[2] References to "Tr." are to the administrative record in this case.  (Dkt. No. 7)

denied, and plaintiff then appeared and testified at an administrative hearing on February 6, 2015. (Tr. 19, 34-56, 58-75) Administrative Law Judge ("ALJ") William Weir issued an unfavorable decision on April 10, 2015. (Tr. 16-29) The Appeals Council subsequently denied review on September 23, 2015. (Tr. 1-5) Plaintiff filed a complaint with this Court on November 20, 2015, after which the Court remanded plaintiff's case to the agency for further analysis of the medical evidence. (Tr. 397-434)

Following remand, a hearing was held February 5, 2018 before ALJ Weir, at which plaintiff, his counsel, and a vocational expert appeared and testified. (Tr. 336, 356-96) On February 28, 2018, the ALJ again issued an unfavorable decision. (Tr. 333-48) The Appeals Council declined to review the ALJ's decision on August 10, 2018. (Tr. 321-26) This action followed. (Dkt. No. 1)

The issue before the Court is whether there was substantial evidence to support the ALJ's decision that plaintiff was not under a disability as defined by the Act.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

2

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.  The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588.  While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.  The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence.  Further, the Commissioner's factual conclusions must be applied to the correct legal standard.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Failure to apply the correct legal standard is reversible error.  *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).  The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A).  The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process."  20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity."  *Id.* §404.1520(b).  If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.*  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c).  To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.*  As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations.  *Id.*  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first,

4

whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §404.1520(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §404.1520(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §404.1520(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.*  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.* §404.1520(g)(1).  If the claimant can adjust to other work, he or she is not disabled.  *Id.*  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.     *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the application date of March 18, 2014.  (Tr. 338)  At step two, the ALJ found that plaintiff had severe impairments of mood disorder, generalized anxiety disorder, and degenerative disc disease of the lumbar and cervical spine; and the nonsevere impairment of status-post amputation of left middle finger.  (*Id.*)  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (Tr. 339)  Before proceeding to step four, the ALJ found that plaintiff had the RFC to perform light work,[3] except limited to simple repetitive one and two step tasks, no complex work; can incidentally reach overhead; occasionally crawl, bend, crouch, stoop, and kneel; incidental public and occasional co-worker and supervisory contact, and no more than one change in the workplace or general task day.  (Tr. 340)

Proceeding to step four, the ALJ found that plaintiff was unable to perform his past relevant work as a contractor.  (Tr. 347)  Proceeding to step five, and after considering

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *See* 20 C.F.R. § 404.1567(b).

testimony from a vocational expert, in addition to plaintiff's age, work experience and RFC, the ALJ found that there were other jobs that exist in significant numbers in the national economy that plaintiff could perform, such as injection molder and small products assembly. (Tr. 347-48) Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act. (Tr. 348)

IV.     _Plaintiff's Challenges_

Plaintiff argues that the ALJ's decision was unsupported by substantial evidence because: (1) the ALJ selectively read the opinion evidence, relied on his own lay opinion, and failed to close gaps in the record; and (2) the record contradicts the assessed RFC for light work with exceptions. (_See_ Dkt. No. 15-1 at 2, 13-30)[4]

A.      Opinion Evidence

It is the ALJ's role to resolve conflicts in the record medical evidence. _See Veino,_ 312 F.3d at 588; _see also Pope v. Barnhart_, 57 Fed. Appx. 897, 899 (2d Cir. Feb. 24, 2003) (summary order; "[a]n ALJ has an independent duty to resolve ambiguities and inconsistencies . . . [but] where the inconsistencies do not appear resolvable, the ALJ may decide based on the available evidence"). An ALJ may properly discount the opinion of a treating or examining physician when the opinion is internally inconsistent or inconsistent with other evidence. _See Halloran v. Barnhart_, 362 F.3d 28, 32 (2d Cir. 2004); _see also Domm v. Colvin_, 579 Fed. Appx. 27, 28 (2d Cir. Sept. 23, 2014) (summary order); _Micheli v. Astrue_, 501 Fed. Appx. 26, 28-29 (2d Cir. Oct. 25, 2012) (summary

---

[4] The Local Rules of Civil Procedure for this District provide a 30-page limit on opening briefs in Social Security cases. _See_ Loc. R. Civ. P. 5.5(d)(4). Plaintiff's opening brief is 30 pages and contains 42 footnotes, many of which span half of a page in length. Plaintiff's excessive use of footnotes therefore violates the Local Rules. _See_ Loc. R. Civ. P. 10(a)(3) ("extensive footnotes . . . may not be used to circumvent page limitations"). Counsel is _again_ reminded to comply with the Local Rules in future briefs. _See Cheverez v. Comm'r of Soc. Sec.,_ No. 18-CV-0711, 2020 WL 561036, at *2, n.1 (W.D.N.Y. Feb. 5, 2020).

order); *see also Burguess v. Berryhill*, No. 17-CV-6204, 2018 WL 3569933, at *4 (W.D.N.Y. July 25, 2018).

Generally, when assessing a plaintiff's RFC, "[a]n ALJ must rely on the medical findings contained within the record and cannot make his own diagnosis without substantial medical evidence to support his opinion." *Goldthrite v. Astrue*, 535 F. Supp. 2d. 329, 339 (W.D.N.Y. 2008). However, when the medical evidence shows only minor impairments, "an ALJ permissibly can render a common-sense judgment about functional capacity even without a physician's assessment." *Wilson v. Colvin*, 13-CV-6286, 2015 WL 1003933, *21 (W.D.N.Y. Mar. 6, 2015); *see also Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

In this case, the ALJ evaluated the following opinion evidence:

On June 26, 2014, Samuel Balderman, M.D., performed a consultative orthopedic examination of Plaintiff. (Tr. 229-33) Plaintiff lost part of the middle finger in his left hand in an accident 15 years prior to the examination. (Tr. 229) He used marijuana daily. (Tr. 229, 231) Dr. Balderman observed that Plaintiff walked and stood normally, and plaintiff was able to squat the full range. (Tr. 230) Plaintiff was able to walk on his heels and toes, rise from a chair, and climb on and off the examination table without difficulty. (Tr. 230) He had normal muscle strength and range of motion in his neck, shoulders, elbows, forearms, wrists, fingers, hips, knees, and ankles. (Tr. 230) He had reduced flexion, but otherwise normal range of motion, in his lower back. (Tr. 230) Straight leg raising was

negative. (Tr. 230)  Plaintiff had mildly reduced grip strength in his left hand but normal grip strength in his right hand. (Tr. 230)  His hand and finger dexterity was intact. (Tr. 230)  X-rays of Plaintiff's lumbar spine showed old compression fractures at T11 and L1, but no disc space narrowing. (Tr. 231, 233)  Dr. Balderman said that Plaintiff had mild left-hand limitations in repetitive gross motor activities, but no other physical limitations. (Tr. 231)  The ALJ gave this opinion little weight insofar the assessment of mild limitation of the left hand for repetitive gross motor function was inconsistent with the medical record and hearing testimony. (Tr. 346)

On December 11, 2015, plaintiff underwent a consultative examination with Dr. Donna Miller. (Tr. 763)  Plaintiff walked and stood normally, and he was able to squat the full range. (Tr. 767)  He was able to walk on his heels and toes, rise from a chair, and climb on and off the examination table without difficulty. (Tr. 767)  He had normal muscle strength and range of motion in his shoulders, elbows, forearms, wrists, fingers, hips, knees, and ankles. (Tr. 768)  He had reduced range of motion in his back and neck, but straight leg raising was negative. (Tr. 768)  Plaintiff declined to demonstrate his abilities to zip, tie, button, and Velcro, but did not request assistance to get dressed or undressed. (Tr. 768)  Dr. Miller diagnosed neck and mid-back pain, and she opined that plaintiff had mild to moderate limitations in heavy lifting, bending, carrying, reaching, pushing, and pulling. (Tr. 768)  The ALJ afforded this opinion "great weight" because it was based on an examination and program knowledge.  Additionally, the ALJ observed that plaintiff testified that he had no problems with tying his shoes and buttoning. (Tr. 346)

In June 2014, Janine Ippolito, Psy.D., performed a consultative psychological evaluation of Plaintiff. (Tr. 224-28)  Plaintiff said that he had struggled with depression

since childhood, and his symptoms had worsened because he was under financial stress. (Tr. 224-25)  His daily activities included cooking, cleaning, household chores, caring for his cat, washing laundry, shopping for groceries, watching television, using public transportation, and performing personal care.  (Tr. 226-27)  He was able to interact with his neighbors and sisters, and his hobbies included swimming, gardening, walking, playing tennis, and going to the park.  (Tr. 226)  Plaintiff used marijuana daily.  (Tr. 225)

Dr. Ippolito observed that Plaintiff had neutral mood, dull affect, fluent and clear speech, coherent and goal-directed thought processes, intact attention and concentration, intact memory, average intellectual functioning, and fair insight and judgment.  (Tr. 225-26)  Dr. Ippolito diagnosed depression and a marijuana use disorder, and she opined that plaintiff had no limitations in his abilities to follow and understand simple instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, and relate adequately with others.  (Tr. 227)  Additionally, plaintiff had mild to moderate limitations in his ability to appropriately deal with stress.  (Tr. 227)  The ALJ afforded this opinion some weight, rejecting the portion of the opinion finding that plaintiff was capable of performing complex tasks as inconsistent with the medical evidence and in conflict with the RFC.  (Tr. 346)

In December 2015, Dr. Ippolito performed a second consultative psychological evaluation of Plaintiff.  (Tr. 760-64)  Plaintiff reported anxiety and nervousness related to financial stress, debt, and danger of losing his home.  (Tr. 761)  His daily activities included cooking, cleaning, caring for his cat, washing laundry, shopping for groceries, watching television, reading, using public transportation, socializing with friends, and

performing personal care. (Tr. 762-63)  Dr. Ippolito observed that plaintiff had irritable mood and affect, fluent and clear speech, coherent and goal-directed thought processes, mildly impaired attention and concentration, impaired memory, average intellectual functioning, and fair insight and judgment.   (Tr. 761-62)  Dr. Ippolito diagnosed depression, and she opined that plaintiff had no limitations in his abilities to follow and understand simple instructions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks, and make appropriate decisions.   (Tr. 763)  Dr. Ippolito further opined that plaintiff had moderate limitations in his ability to appropriately deal with stress, and he had moderate to marked limitations in relating adequately with others.  (Tr. 763)  The ALJ gave this opinion great weight because it was based on examination, program knowledge, and consistent with the RFC. (Tr. 346)

On January 30, 2015, plaintiff's treating social worker Raymond Lorigo drafted a letter stating that plaintiff's mental health issues would "severely impact his ability to work." (Tr. 292)  He also stated that he doubted that plaintiff "would be able to return to competitive employment." (*Id.*)  The ALJ gave this opinion little weight on the basis that his opinion was inconsistent with the opinions of Dr. Ippolito, and was inconsistent with his own treatment notes from September, 2017, which document that plaintiff had "work[ed] through" his depression but could no longer perform "physical" work.  (Tr. 346) The ALJ further rejected the opinion because the issue of disability is reserved to the Commissioner.  (*Id.*)

On January 11, 2016, agency medical consultant D. Bruno, Psy.D., reviewed plaintiff's medical records and opined that he retained the capability to perform a range

of simple work that did not require significant contact with others.  (Tr. 470, 473-74)  The ALJ afforded this opinion "some weight" as it was based on record review and consistent with the opinions of Dr. Ippolito.  (Tr. 346)

Contrary to plaintiff's assertion, the ALJ did not fail to properly account for Dr. Miller's "vague and incomplete" hand, carrying, and reaching limitations.  (Dkt. No. 15-1 at 13)  Dr. Miller explicitly opined that plaintiff's hand and finger dexterity were in tact and his grip strength was 5/5 bilaterally.  (Tr. 768)  She did not find a hand limitation.  Further, the ALJ did properly account for Dr. Miller's opinion that plaintiff had mild to moderate limitations in "heavy" physical activities by limiting plaintiff's RFC to light work with additional postural limitations.  (Tr. 340, 768)

Plaintiff also contends that although the ALJ gave Dr. Ippolito's 2015 consultative examination great weight, the ALJ improperly accounted for the "stress limitations and additional social limitations" contained in that opinion.  (Dkt. No. 15-1 at 16-17)  A reading of the ALJ's decision belies this contention.  The formulated RFC restricted plaintiff to simple work, only incidental public and occasional co-worker and supervisory contact, and no more than one change in workplace or general task per day.  (Tr. 340)  This is consistent with, if not more restrictive than Dr. Ippolito's findings, and is sufficient to account for the plaintiff's stress and social limitations. *See Herb v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2019) ("[E]ven without explicitly referencing a stress limitation, an RFC determination may adequately account for a claimant's stress-related limitations. For example, an RFC limiting a plaintiff to occasional interaction with co-workers and the public, and to the performance of simple, routine tasks, may account for the plaintiff's stress-related limitations.") (collecting cases); *see also Annarino v. Comm'r*

*of Soc. Sec.*, No. 18-CV-130, 2019 WL 464604, at *3 (W.D.N.Y. Sept. 24, 2019) (limitation to simple and routine tasks adequately accounted for moderate limitations in stress).

Plaintiff also challenges the ALJ's rejection of Mr. Lorigo's statement that he doubted plaintiff could "return to competitive employment." (Tr. 292, 346)  As an initial matter, Mr. Lorigo was not an "acceptable medical source" at the time of the ALJ's decision, and the "treating physician" rules in 20 C.F.R. § 416.927(c)(2) do not apply to him. *See* 20 C.F.R. § 416.913(a) (2015).[5]  Because Mr. Lorigo was not a physician or other acceptable medical source, the ALJ had broad discretion to discount his statements. *See Genier v. Astrue*, 298 Fed. Appx. 105, 108-09 (2d Cir. 2008) (non-acceptable medical sources "do not demand the same deference as those of a treating physician," and an ALJ is "free to discount the assessments [of such sources] accordingly in favor of the objective findings of other medical doctors").  In addition, the ALJ was not required to attribute Mr. Lorigo's conclusory statement that plaintiff was unable to work any significant weight.  *See* 20 C.F.R. § 416.927(d)(1) (reserving for the Commissioner the responsibility "for making the determination or decision about whether [a claimant] meet[s] the statutory definition of disability"); *Michels v. Astrue*, 297 Fed. Appx. 74, 76 (2d Cir. Oct. 30, 2008) ("[a] doctor's designation of a party as disabled begins the disability inquiry, it does not end it."); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("physician's statement that the claimant is disabled cannot itself be determinative").

The ALJ's rejection of Mr. Lorigo's opinion as inconsistent with his own treatment notes from September, 2017, was also supported by substantial evidence.  Those notes

---

[5] In January 2017, the agency amended 20 C.F.R. § 416.913. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 FR 62559 (Sept. 9, 2016); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844 (Jan. 1, 2017). The new regulations are not effective for claims filed before March 27, 2017.

indicate that plaintiff was "basically stable," and despite issues with depression had "been able to work through it," and that he reported limited motivation. (Tr. 856-57) Although plaintiff avers that the ALJ could not have relied on Mr. Lorigo's notes "because the ALJ did not have Mr. Lorigo's notes or obtain missing records," *see* Dkt. No. 15-1 at 18, the hearing exhibits contain the specific treatment note cited by the ALJ. To the extent plaintiff alleges there is a gap in the record, it is unclear that any relevant records are missing from the transcript.

The ALJ generally bears a burden for developing the record, even in circumstances where a claimant is represented. *See e.g., Fredrick v. Comm'r Soc. Sec.*, No. 16-CV-898, 2018 WL 4178284, at *1 (W.D.N.Y. Aug 31, 2018). "By the same token, 'an ALJ does not have an affirmative duty to expand the record ad infinitum. Instead, he or she must only develop it when there are gaps in the record, or when the record serves as an inadequate basis on which to render a decision.'" *Wilson v. Berryhill*, No. 16-CV-0756, 2018 WL 6628987, at *4 (W.D.N.Y. Dec. 19, 2018) (quoting *Walker v. Astrue*, No. 11-CV-766, 2012 WL 4473249, at *3 (W.D.N.Y. Sep. 26, 2012)).

On January 8, 2018, plaintiff's counsel notified the ALJ that he planned to seek additional records from Mid Erie Counseling (Mr. Lorigo) and St. Joe's Hospital. (Tr. 649) At the February 5, 2018 hearing, counsel represented to the ALJ that the "only . . . documentation" missing from the record were the "updated records from St. Joseph's Hospital." (Tr. 358-59) Counsel acknowledged that records from Mid Erie Counseling were contained in Exhibit 21-F, and did not assert that those records, as submitted, were incomplete. The ALJ advised counsel that "anything that shows up before I make my decision, I'll be happy to consider it." (Tr. 358-59)

Later in the hearing, upon questioning about plaintiff's psychiatric conditions, the ALJ referred to plaintiff's treatment note from Mr. Lorigo dated September 24, 2017.  (Tr. 384)  Counsel responded that "it looks like those records go to September of 2017 . . . we're in February of 2018 . . . we would need to get other notes from his continuing evaluations."  (Tr. 384)  The ALJ stated again that he would "give time to get that."  (*Id.*)  Although plaintiff identified the missing records as relating to the four-month period immediately preceding the hearing date, he now contends that "most treatment notes were missing from 2014-2017."  (Dkt. No. 19 at 5)  Plaintiff's argument that the ALJ failed to develop the record concerning Mr. Lorigo's records is unclear and inconsistent, if not disingenuous.

In any event, plaintiff's counsel failed to submit any records or request additional time in the 23 days that elapsed between the hearing date and the ALJ's decision.  Nor did he submit any additional medical evidence to the Appeals Council or to this Court.  By inquiring about what treatment documents might be missing from the record and providing plaintiff's counsel the opportunity to obtain and submit subsequently acquired evidence, the ALJ properly discharged his duty to develop the record.  *See Melton v. Colvin*, No. 13-CV-6188, 2014 WL 1686827, at *8 (W.D.N.Y. Apr. 29, 2014) ("[T]he ALJ satisfied her duty to develop the record by holding the record open after the hearing and subsequently granting Plaintiff's request for an additional 7–day extension.") (collecting cases); *see also Brown v. Colvin*, No. 14-CV-1784, 2016 WL 2944151, at *3 (D. Conn. May 20, 2016) ("The Court finds that, under these circumstances, the ALJ fulfilled her duty to develop the record. While Plaintiff did testify to worsening of symptoms relating to his diabetes in the year or so before the hearing, his testimony and statements from his attorney also

indicate (or at the very least strongly suggest) that updated records . . . were forthcoming. The ALJ left the record open to accept those records. When an ALJ holds open the record, and a claimant fails to provide additional evidence, the ALJ will be found to have fulfilled her duty to develop the record.").

Finally, plaintiff's argument that the ALJ improperly based the RFC on his own lay opinion of the medical evidence is without merit. (Dkt. No. 15-1 at 13)   Because the medical opinions and other evidence of record offered differing descriptions of plaintiff's functional limitations, it was the ALJ's role to weigh and resolve conflicts in the evidence. *See Veino*, 312 F.3d at 588.   While the ALJ's RFC determination is a medical question, there is no requirement that an RFC finding correspond directly to a specific medical opinion.   *See Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 Fed. Appx. 75, at 79 (2d Cir. Nov. 13, 2018) (the ALJ's RFC determination need not perfectly correspond with any of the opinions of medical sources cited in his decision); *Matta*, 508 Fed. Appx. at 56 (ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision"). The pertinent regulations require the ALJ to assess an RFC based on all relevant medical and other evidence, including any lay statements or information about what plaintiff could do. *See* 20 C.F.R. §§ 416.945(a)(3), 416.946(c).   Here, the ALJ thoroughly analyzed plaintiff's testimony, the objective medical findings, and the opinion evidence in formulating plaintiff's RFC. Thus, the Court finds that ALJ did not rely on his own lay opinion, but rather, properly weighed the evidence as a whole in making his RFC determination.

It is also worth noting that the ALJ did in fact rely heavily on the opinions of Drs. Miller and Ippolito in determining the RFC, which he was entitled to do.   *See Mongeur v.*

*Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (holding that the report of a consultative physician can constitute substantial evidence to support an ALJ's finding that the claimant is not disabled); *Petrie v. Astrue*, 412 Fed. Appx. 401, 405-06 (2d Cir. 2011) (ALJ properly concluded that the two consultative psychologists' opinions, finding that plaintiff was able to perform unskilled work, were entitled to controlling weight because they were well supported and consistent with the record; and moreover, the opinions constituted substantial evidence in support of the ALJ's RFC).

Indeed, the bulk of plaintiff's lengthy and discursive arguments simply disagree with the ALJ's evaluation of the evidence.   The Court reiterates that the substantial evidence standard is so deferential that there could be "two contrary rulings on the same record [and both] may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012) (citation omitted).   "[O]nce an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original; internal quotation omitted).   As long as substantial record evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision. *See Vilardi v. Astrue*, 447 Fed. Appx. 271, 272 (2d Cir. Jan. 10, 2012) (summary order); *Rouse v. Colvin,* No. 14-CV-817, 2015 WL 7431403, at *6 (W.D.N.Y. Nov. 23, 2015) ("[T]his Court must afford the Commissioner's determination considerable deference, and may not substitute 'its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review.'") (quoting *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).  This Court will not reweigh the evidence presented to the ALJ.

B.     RFC Finding

Plaintiff appears to argue that the RFC of a limited range of light work was unsupported by substantial evidence.  (Dkt. No. 15-1 at 24-30)  In a related argument, plaintiff challenges the ALJ's assessment of his credibility.  (*Id.* at 28)

First, plaintiff contends that ALJ did not account for his reported inability to have contact with supervisors and coworkers and use a keyboard due to his left, non-dominant hand limitations.  (Dkt. No. 15-1 26, 28, 30)  The ALJ did account for plaintiff's social limitations by incorporating only incidental public and occasional co-worker and supervisory contact.  (Tr. 340)  Moreover, Despite plaintiff's 1998 partial middle finger amputation on his left hand, he testified that he was able to perform fine motor tasks like tying his own shoes and buttoning his clothing.  (Tr. 338)  Plaintiff's physicians repeatedly opined throughout the relevant period that plaintiff's muscle strength, motor function, and coordination in his left arm and hand were normal, despite his 1998 finger injury.  (Tr. 257, 280, 709, 726, 743, 755, 790, 802)  Additionally, plaintiff was able to continue working as a construction contractor, earning $28,214 the following year and $13,142 in 2003.  (Tr. 125-26)  He performed additional "under the table" home maintenance work that is not reflected in his earnings records.  (Tr. 380)  As such, the ALJ found that plaintiff's left partial finger amputation was nonsevere.  (Tr. 338)

While it is true that an RFC "must account for limitations imposed by both severe and nonsevere impairments," *Parker-Grose v. Astrue*, 462 Fed. Appx. 16, 18 (2d Cir. 2012) (summary order) (citing 20 C.F.R. § 416.945(a)(2)), the Court finds no error in this regard because the administrative decision demonstrates that the ALJ considered plaintiff's partial left finger amputation in the RFC analysis, and ultimately determined that

18

it did not warrant any additional limitations.  In formulating the RFC, the ALJ discussed plaintiff's testimony and daily activities, as well as the consultative examinations of Drs. Balderman and Miller with respect to his left hand injury.  (Tr. 341, 342, 343, 345)  The Court finds that the ALJ considered plaintiff's nonsevere impairment in determining the RFC and, as discussed above, that substantial evidence supports his conclusion that it did not warrant any limitations. *See Cromwell v. Comm'r of Soc. Sec.*, No. 18-CV-1194, 2020 WL 409989, at *2 (W.D.N.Y. Jan. 24, 2020) ("Accordingly, the Court finds that the ALJ considered Plaintiff's mental impairments in determining his RFC and that substantial evidence supports his conclusion that they do not warrant any limitations."); *Goettel v. Comm'r of Soc. Sec.*, No. 18-CV-1285, 2019 WL 6037169, at *4 (W.D.N.Y. Nov. 14, 2019) ( "the ALJ specifically considered the medical evidence pertaining to Plaintiff's mental impairments at step four and determined no additional mental limitations were warranted"); *Crumedy v. Comm'r of Soc. Sec.*, No. 16-CV-1261, 2017 WL 4480184, at *6, (N.D.N.Y. Oct. 6, 2017) (evidence suggested that plaintiff's impairment imposed no more than a minimal effect on his functioning and substantial evidence supported the ALJ's conclusion that there was no basis for including limitations regarding the nonsevere impairment in the RFC).

Second, Plaintiff argues that the ALJ improperly considered his significant activities of daily living during the relevant period.  (Dkt. No. 15-1 at 28-30)  20 C.F.R. § 416.929(c) and SSR 16-3p explicitly authorize an ALJ to consider Plaintiff's daily activities.  It is the function of the ALJ, not the reviewing court, to assess the credibility of witnesses. *See Tankisi v. Comm'r of Soc. Sec.*, 521 Fed. Appx. 29, 35 (2d Cir. 2013).

The record indicates, and as discussed by the ALJ, that plaintiff lived alone and performed daily activities that included cooking, household cleaning and chores, maintaining his yard, washing laundry, going outside daily, using public transportation, riding a bicycle, shopping for groceries and household items, caring for his cat, watching television, reading, fishing, swimming, hiking, playing tennis, going to the park, traveling, gardening, socializing with neighbors and friends, and performing personal care.  (Tr. 339-40, 341, 345, *see* Tr. 142-46, 226-27, 376-78, 762-63)  The ALJ considered plaintiff's daily activities in the context of the record as a whole, and properly found them inconsistent with plaintiff's allegations of a disabling impairment. *See Sloan v. Colvin*, 24 F.Supp.3d 315, 328-29 (W.D.N.Y. 2014) (remand not required where ALJ evaluated plaintiff's credibility based on plaintiff's testimony, activities of daily living and conflicting medical evidence); *O'Dell v. Colvin*, No. 16 Civ. 368, 2016 WL 6882861, at *21 (S.D.N.Y. Nov. 22, 2016) (ALJ properly discounted the plaintiff's credibility based on plaintiff's daily activities which included volunteering with the fire department); *Allen v. Astrue*, No. 11-CV-330, 2012 WL 951553, at *3 (N.D.N.Y. Mar. 20, 2012) (ALJ properly discounted the plaintiff's credibility based on plaintiff's testimony that he had performed odd jobs during the large gaps in his employment history).

In sum, the  ALJ's decision is supported by substantial evidence and free of legal error.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 18) is granted.

The Clerk of Court shall take all steps necessary to close this case.


**SO ORDERED.**


Dated:  August 31, 2020
     Buffalo, New York

               MICHAEL J. ROEMER
               United States Magistrate Judge